Barry H. Boise, Esq.
Robert A. Jenkin, II, Esq.
**TROUTMAN PEPPER LOCKE LLP**
Suite 203
104 Carnegie Center Dr.
Princeton, NJ 08540
(609) 951-4125
Barry.boise@troutman.com
Robert.jenkin@troutman.com

*Attorneys for Plaintiff*
*Quotient Sciences – Philadelphia, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| QUOTIENT SCIENCES – PHILADELPHIA, LLC,<br>Plaintiff,<br><br>v.<br><br>EDDINGPHARM (HONG KONG) COMPANY LIMITED,<br><br>Defendant. | **CIVIL ACTION NO.**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Quotient Sciences – Philadelphia, LLC, with its executive corporate office located at 3 Chelsea Parkway, Suite 305, Boothwyn, Pennsylvania 19061, by and through its attorneys, asserts the following claims against Defendant Eddingpharm (Hong Kong) Company Limited, with its principal place of business located at Suites 3306, 33/F, Tower 6, the Gateway, Harbour City, 9 Canton Road, Tsim Sha Tsui, KLN, Hong Kong, and in support thereof avers as follows:

## THE PARTIES

1. Plaintiff Quotient Sciences – Philadelphia, LLC ("Quotient") is a manufacturer and supplier of pharmaceutical products.

2. Quotient is a Delaware corporation with its executive corporate office located at 3 Chelsea Parkway, Suite 305, Boothwyn, Pennsylvania 19061.

3. Defendant Eddingpharm (Hong Kong) Company Limited ("Eddingpharm") is a distributor of pharmaceutical products.

4. Eddingpharm is organized under the laws of Hong Kong S.A.R., China with its principal place of business located at Suites 3306, 33/F, Tower 6, the Gateway, Harbour City, 9 Canton Road, Tsim Sha Tsui, KLN, Hong Kong.

5. Eddingpharm is the assignee of Shionogi Inc., a Delaware corporation with its principal place of business located at 300 Campus Drive, Florham Park, New Jersey 07932.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. In particular, and as it relates to the amount in controversy, at issue are unpaid invoices in the amount of [redacted], as well as breach of contract damages for six additional quarters of pharmaceutical products, interest and attorneys' fees and costs.

8. Quotient is comprised of a single member, who is a citizen of Delaware.

9. Complete diversity exists because Quotient is a citizen of Delaware and Pennsylvania, and Eddingpharm is a citizen of China.

10. This Court has personal jurisdiction over Eddingpharm because the subject matter of this litigation arises from Eddingpharm's contacts with this forum including, but not limited to, contracts in which Eddingpharm irrevocably consented to the personal jurisdiction of this Court.

11. Venue is proper in this District because the subject matter of this litigation arises from Eddingpharm's contacts with this forum including, but not limited to, contracts in which Eddingpharm agreed that all disputes arising thereunder shall be brought in federal courts in or for the State of New Jersey.

## THE SUPPLY AGREEMENT

12. Quotient (formerly known as QS Pharma, LLC) and Shionogi Inc. ("Shionogi") were parties to a Supply Agreement wherein they agreed that [redacted]

13. The Supply Agreement had a commencement date of September 18, 2017, and was to continue indefinitely unless terminated via written notice by either party with at least twenty-four (24) months' notice. The Supply Agreement further provided that the Agreement could be immediately terminated in the event of a material breach of the Agreement, provided the breaching party was given notice and at least sixty (60) days to remedy the breach.

14. The Supply Agreement contained a choice of law, choice of venue, consent to personal jurisdiction clause that read:

> This Agreement shall be governed by and construed under the laws of the State of New Jersey, U.S.A., excluding its conflict of law provisions. THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS SHALL NOT APPLY TO THIS AGREEMENT. The exclusive venue for any dispute arising under or related to this Agreement shall be in the federal courts in or for the State of New Jersey, and

each Party hereby irrevocably consents to the personal jurisdiction of such courts.

15. Pursuant to the Supply Agreement, Quotient was to provide Shionogi quantities of the Product specified in the forecast schedule provided by Shionogi to Quotient.

16. Upon Quotient's tendering of the Product, the Supply Agreement provided Shionogi with a sixty (60) day review period to inspect and test the Product. Upon the expiration of the review period, unless a notice of exception was provided to Quotient, the Product was deemed accepted and Shionogi had no right to reject the Product except for discovery of a latent defect.

17. Under the Supply Agreement, Quotient was entitled to invoice Shionogi for all Product tendered to Shionogi (or stored at the request of Shionogi), payable within forty-five days of the date of the invoice.

18. On December 8, 2023, Quotient and Shionogi entered into a Contract Amendment to Supply Agreement ("Amendment Agreement"), which amended certain terms of the Supply Agreement.

19. The Amendment Agreement amended Section 8.1 of the Supply Agreement to read:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

20. Additionally, the Amendment Agreement amended Section 8.9 of the Supply Agreement to read:

[redacted]

21. The Amendment Agreement also replaced Section 18.3 of the Supply Agreement in its entirety with:

> (1) Consequences of termination for Shionogi's default or business strategies. On termination of this Agreement by QSP pursuant to clause 17.2 or by Shionogi pursuant to clause 17.3, Shionogi will comply with the requirements of Clause 18.1(b) and pay all amounts due in the subsequent six (6) Calendar Quarters following the breach (that are not disputed in accordance with Clause 8.5).
>
> (2) In circumstances where Clause 7.2(e) applies, Shionogi can terminate the Agreement with 12 months' written notice, during which period QSP will continue to manufacture the Product for as long as it can be manufactured in a manner compliant with the Legal Requirements of the Competent Authority and Shionogi will pay all amounts due in respect of such twelve month period following the notice.

22. On July 3, 2024, Quotient, Shionogi, and Eddingpharm entered into an Assignment and Assumption Agreement and Consent ("Assignment Agreement," collectively

with the Supply Agreement and Amendment Agreement, the "Contracts"). Pursuant to the Assignment Agreement, Shionogi assigned to Eddingpharm "all of its rights, title and interest in and to, and all of its liabilities and obligations under the Supply Agreement [as amended by the Amendment Contract] except those rights, liabilities and obligations related to Product delivered to Shionogi before July 3, 2024."

23. Throughout 2025, Quotient manufactured and sold the Product to Eddingpharm pursuant to the Contracts.

24. Consistent with the terms of the Contracts, upon tendering of the Product to Eddingpharm, Quotient invoiced Eddingpharm. Each invoice required payment by Eddingpharm within forty-five (45) days.

25. Eddingpharm accepted Quotient's tendering of the Product and the sixty (60) day review period has since expired without notice of exception, such that the Product was deemed accepted.

## **FEBRUARY 6 NOTICE LETTER**

26. On February 6, 2026, Quotient provided formal written notice to Eddingpharm that Eddingpharm was in material breach of the Contracts.

27. Quotient provided this notice due to Eddingpharm's failure to timely pay 30 Quotient invoices for batches of the Product.

28. In its February 6, 2026 letter, Quotient also:

a. Reserved its right to suspend performance under the Contracts until all overdue invoices were paid;

b. Reserved its right to charge interest on overdue balances at 1% per month;

c. Reserved its right to recover reasonable costs of collection, including attorneys' fees and court costs; and,

d. Reserved its right to terminate the Contracts if the material breach was not remedied within the sixty (60) day cure period provided under the Contracts.

**MARCH 2 DEMAND FOR REASONABLE ASSURANCE OF COMPLIANCE**

29. On March 2, 2026, following a series of communications between Quotient and Eddingpharm, Quotient, through its counsel, wrote to Eddingpharm notifying it that its systematic failure to pay the invoices coupled with Eddingpharm's offers to make payment on the outstanding invoices in future years necessitated Eddingpharm providing Quotient a reasonable assurance of compliance pursuant to N.J.S.A. § 12A:2-609.

30. Eddingpharm did not respond to Quotient's March 2, 2026 letter.

**EDDINGPHARM'S FAILURE TO PAY INVOICES AND BREACHES OF THE CONTRACTS**

31. Presently outstanding and overdue are thirty (30) invoices issued to Eddingpharm for Product delivered and sold to Eddingpharm.

32. Eddingpharm was required to pay each invoice submitted by Quotient within forty-five (45) days.

33. Thus, presently due and owing for Quotient's invoices is the sum total of [redacted], exclusive of interest, attorneys' fees and costs. A list of the outstanding and due invoices is attached as **Exhibit A**.

34. As of the date of this Complaint, Eddingpharm has failed to make any payments on the above delinquent invoices despite several demands.

35. Pursuant to the Contracts, Quotient was permitted to terminate the Contracts upon written notice if Eddingpharm failed to cure material breaches within sixty (60) days.

36. Quotient gave Eddingpharm multiple written notices of its material breaches of the Contracts by failing to pay the outstanding invoices.

37. Eddingpharm failed to cure the breaches within sixty (60) days, including failing to give reasonable assurances of compliance.

38. Accordingly, via written notice, the Contracts were terminated by Quotient on May 26, 2026.

39. Pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to: (i) purchase all of any remaining stock of the Product and/or work in process; (ii) purchase, for the cost paid by Quotient, any raw materials purchased by Quotient for the manufacturing of the Product; (iii) pay all amounts invoiced by Quotient that remain unpaid; and (iv) return all of Quotient's Confidential Information to Quotient.

40. Pursuant to paragraph 18.3(1) of the Supply Agreement, as amended by the Amendment Agreement, Eddingpharm is required to pay, in addition to the outstanding invoices, all amounts due to Quotient for six (6) additional calendar quarters.

## COUNT I
### (ACTION FOR THE PRICE OF GOODS UNDER N.J.S.A. § 12A:2-709)

41. Quotient repeats and realleges all prior allegations above as though set forth in full herein.

42. Quotient and Eddingpharm are merchants generally engaged in the business of selling, buying and trading goods of the type that are the subject of this action.

43. Quotient and Eddingpharm, as assignee of Shionogi and in its own right, entered into the Contracts for the sale of the Product.

44. Eddingpharm, as assignee of Shionogi and in its own right, entered into the valid, written Contracts.

45. The Contracts involved Eddingpharm ordering certain quantities of the Product, Quotient's supply of the Product in the quantities ordered, and Quotient invoicing Eddingpharm for the Product tendered to and accepted by Eddingpharm.

46. Eddingpharm ordered and Quotient delivered certain quantities of Product.

47. Eddingpharm accepted and did not reject any Product delivered by Quotient.

48. Quotient issued corresponding invoices to Eddingpharm for the same quantities of Product.

49. In particular, Quotient issued to Eddingpharm each of the invoices listed in **Exhibit A**.

50. Despite several demands, Eddingpharm has failed to pay these invoices.

51. Eddingpharm currently owes Quotient a total of [redacted] on these invoices, plus interest accruing at one percent (1%) per month, together with attorneys' fees and costs.

**COUNT II**
**(Breach of Contract)**

52. Quotient repeats and realleges all prior allegations above as though set forth in full herein.

53. As set forth above, Quotient and Eddingpharm, as assignee of Shionogi and in its own right, entered into the Contracts for the sale of the Product.

54. Eddingpharm, as assignee of Shionogi and in its own right, entered into the valid, written Contracts.

55. Quotient performed all of its obligations under the Contracts.

56. As more fully described above, Eddingpharm materially breached the Contracts by failing to pay outstanding and due invoices and failing to provide reasonable assurances of payment of the outstanding invoices when demanded.

57. As a direct and proximate result of Eddingpharm's breaches, the Contracts were terminated.

58. As a direct and proximate result of Eddingpharm's breaches, Quotient has suffered damages.

59. Eddingpharm currently owes Quotient a total of [redacted] on these invoices, plus interest accruing at one percent (1%) per month, together with attorneys' fees and costs.

**COUNT III**
**(Declaratory Judgment)**

60. Quotient repeats and realleges all prior allegations above as though set forth in full herein.

61. As set forth above, Quotient and Eddingpharm, as assignee of Shionogi and in its own right, entered into the Contracts for the sale of the Product.

62. Eddingpharm, as assignee of Shionogi and in its own right, entered into the valid, written Contracts.

63. Quotient performed all of its obligations under the Contracts.

64. As more fully described above, Eddingpharm materially breached the Contracts by failing to pay outstanding and due invoices and failing to provide reasonable assurances of payment of the outstanding invoices when demanded.

65. Quotient gave Eddingpharm multiple written notices of its material breaches of the Contracts.

66. Eddingpharm failed to cure the material breaches of the Contracts within sixty (60) days.

67. The Contracts were terminated by Quotient on May 26, 2026 via written notice.

68. Pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to: (i) purchase all of any remaining stock of the Product and/or work in process; (ii) purchase, for the cost paid by Quotient, any raw materials purchased by Quotient for the manufacturing of the Product; (iii) pay all amounts invoiced by Quotient that remain unpaid; and (iv) return all of Quotient's Confidential Information to Quotient.

69. Pursuant to paragraph 18.3(1) of the Supply Agreement, as amended by the Amendment Agreement, Eddingpharm is required to pay, in addition to the outstanding invoices, all amounts due to Quotient for six (6) additional calendar quarters.

70. Accordingly, Quotient is entitled to a declaration that: (i) the Contracts were terminated as of May 26, 2026; (ii) the Contracts were terminated by Quotient as a result of Eddingpharm's failure to remedy its material breaches of the Contracts within sixty (60) days of its receipt of written notice of such breaches; (iii) pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to: (a) purchase all remaining stock of the Product and/or work in process; (b) purchase, for the cost paid by Quotient, any raw materials purchased by

Quotient for the manufacture of the Product; and (c) return all of Quotient's Confidential Information to Quotient; (iv) pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to pay for all past due invoices, which total [redacted], plus interest accruing at one percent (1%) per month; (v) pursuant to paragraph 18.3(1) of the Supply Agreement, as amended by the Amendment Agreement, Eddingpharm is required to pay all amounts due to Quotient for six (6) additional calendar quarters; and (vi) pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to pay Quotient's attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Quotient respectfully requests that the Court enter judgment against Eddingpharm and in Quotient's favor:

a) For the price of goods in the amount of [redacted];

b) For damages for breach of the Contracts;

c) Declaring the Contracts were terminated as of May 26, 2026;

d) Declaring the Contracts were terminated by Quotient as a result of Eddingpharm's failure to remedy its material breaches of the Contracts within sixty (60) days of receiving written notice of such breaches;

71. Declaring that pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to purchase all of any remaining stock of the Product and/or work in process from Quotient.

72. Declaring that pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to purchase, for the cost paid by Quotient, any raw materials purchased by Quotient for the manufacturing of the Product.

73. Declaring that pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to return all of Quotient's Confidential Information to Quotient.

e) Declaring that pursuant to paragraph 18.3(1) of the Supply Agreement, as amended by the Amendment Agreement, Eddingpharm is required to pay, in addition to the outstanding invoices, all amounts due to Quotient for six (6) additional calendar quarters.

f) For contractual, prejudgment and post-judgment interest;

g) For Quotient's attorneys' fees and costs; and

h) For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Quotient respectfully requests a trial by jury on all issues triable to a jury.

## NOTICE OF OTHER ACTIONS PURSUANT TO L.CIV.R. 11.2

The undersigned hereby certifies that to my knowledge, the within case is not the subject of any action, arbitration, or administrative hearing now pending in any court.

## CERTIFICATION OF NON-ARBITRABILITY UNDER L.CIV.R. 201.1

The undersigned hereby certifies pursuant to Local Civil Rule 201.1(d) that the relief sought in this action consists of monetary damages in excess of $150,000 and is thus not eligible for arbitration.

Dated: June 1, 2026

By: /s/ Robert A. Jenkin, II

Robert A. Jenkin, II, Esq.
Barry H. Boise, Esq.
**TROUTMAN PEPPER LOCKE LLP**
Suite 203
104 Carnegie Center Dr.
Princeton, NJ 08540
robert.jenkin@troutman.com
barry.boise@troutman.com
*Attorneys for Plaintiff*
*Quotient Sciences – Philadelphia, LLC*