Anthony J. Staltari (Attorney ID. No. 233022017)
Laura L. Fairneny (*pro hac vice* forthcoming)
Courtney C. Whang (*pro hac vice* forthcoming)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel.: (212) 849-7000
anthonystaltari@quinnemanuel.com
laurafairneny@quinnemanuel.com
courtneywhang@quinnemanuel.com

*Attorneys for Defendant Eddingpharm (Hong Kong) Company Limited*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| QUOTIENT SCIENCES – PHILADELPHIA, LLC,<br>Plaintiff,<br><br>v.<br><br>EDDINGPHARM (HONG KONG) COMPANY LIMITED,<br><br>Defendant. | Civil Action No.: 3:26-cv-06364 (ZNQ)(RLS)<br><br>**DEFENDANT EDDINGPHARM (HONG KONG) COMPANY LIMITED'S ANSWER AND COUNTERCLAIMS**<br><br>**REDACTED PUBLIC VERSION**<br><br>**JURY TRIAL DEMANDED** |

Defendant Eddingpharm (Hong Kong) Company Limited ("Eddingpharm" or "Defendant"), with its principal place of business located at Suites 3306, 33/F, Tower 6, the Gateway, Harbour City, 9 Canton Road, Tsim Sha Tsui, KLN, Hong Kong, by its undersigned counsel, hereby submits this Answer and Counterclaims

to the Amended Complaint filed by Plaintiff Quotient Sciences – Philadelphia, LLC ("Quotient" or "Plaintiff"), which upon information and belief, has its executive corporate office at 3 Chelsea Parkway, Suite 305, Boothwyn, Pennsylvania 19061. Eddingpharm denies all allegations, averments, statements, and assertions in Quotient's Amended Complaint that it does not expressly admit herein.

Except as otherwise defined herein, capitalized terms used in this Answer, the Affirmative Defenses, and the Counterclaims have the meanings given to them in the Supply Agreement dated September 18, 2017 (the "Supply Agreement"), as amended by the Contract Amendment to Supply Agreement effective as of December 8, 2023 (the "Amendment Agreement"). The Supply Agreement and the Amendment Agreement, together with the Assignment and Assumption Agreement and Consent effective as of July 3, 2024 (the "Assignment Agreement"), are referred to herein as the "Contracts." Eddingpharm uses those terms solely for convenience and without admitting the applicability, validity, or enforceability of any provision of the Contracts, or that any such provision imposes any obligation on Eddingpharm.

## THE PARTIES[1]

1. Plaintiff Quotient Sciences – Philadelphia, LLC ("Quotient") is a manufacturer and supplier of pharmaceutical products.

---

[1] For convenience and clarity, Eddingpharm's Answer uses the same headings as the Amended Complaint. Eddingpharm does not admit any allegations contained in the Amended Complaint's headings.

**ANSWER:** Upon information and belief, Eddingpharm admits that Quotient manufactures and supplies pharmaceutical products. Except as so admitted, Eddingpharm denies the allegations in Paragraph 1.

2. Quotient is a Delaware limited liability company with its executive corporate office located at 3 Chelsea Parkway, Suite 305, Boothwyn, Pennsylvania 19061.

**ANSWER:** Upon information and belief, Eddingpharm admits that Quotient is a limited liability company organized and existing under the laws of the State of Delaware, with its executive corporate office at 3 Chelsea Parkway, Suite 305, Boothwyn, Pennsylvania 19061. Except as so admitted, Eddingpharm denies the allegations in Paragraph 2.

3. Defendant Eddingpharm (Hong Kong) Company Limited ("Eddingpharm") is a distributor of pharmaceutical products.

**ANSWER:** Eddingpharm admits that it commercializes pharmaceutical products. Except as so admitted, Eddingpharm denies the allegations in Paragraph 3.

4. Eddingpharm is organized under the laws of Hong Kong S.A.R., China with its principal place of business located at Suites 3306, 33/F, Tower 6, the Gateway, Harbour City, 9 Canton Road, Tsim Sha Tsui, KLN, Hong Kong.

**ANSWER:** Eddingpharm admits the allegations in Paragraph 4.

5. Eddingpharm is the assignee of Shionogi Inc., a Delaware corporation with its principal place of business located at 300 Campus Drive, Florham Park, New Jersey 07932.

**ANSWER:** Eddingpharm admits that it executed the Assignment Agreement with Shionogi Inc. ("Shionogi") and Quotient as of July 3, 2024. Upon information and belief, Eddingpharm admits that Shionogi is a corporation organized and existing under the laws of the State of Delaware. Except as so admitted, Eddingpharm denies the allegations in Paragraph 5.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:** Paragraph 6 states legal conclusions to which no response is required. To the extent a response is required, Eddingpharm lacks information sufficient to form a belief as to the allegations contained in Paragraph 6 and therefore denies them.

7. In particular, and as it relates to the amount in controversy, at issue are unpaid invoices in the amount of [redacted], as well as breach of contract damages for six additional quarters of pharmaceutical products, interest and attorneys' fees and costs.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 7.

8. Quotient is a limited liability company organized under the laws of the State of Delaware with its executive corporate office located at 3 Chelsea Parkway, Suite 305, Boothwyn, Pennsylvania 19061.

**ANSWER:** Upon information and belief, Eddingpharm admits that Quotient is a limited liability company organized and existing under the laws of the State of Delaware, with its executive corporate office at 3 Chelsea Parkway, Suite 305,

Boothwyn, Pennsylvania 19061. Except as so admitted, Eddingpharm denies the allegations in Paragraph 8.

9. Watch Midco US Holdings, Inc. is the sole member of Quotient. Watch Midco US Holdings, Inc. is a Delaware corporation with its executive corporate office located at 3 Chelsea Parkway, Suite 305, Boothwyn, Pennsylvania 19061.

**ANSWER:** Eddingpharm lacks information sufficient to form a belief as to the allegations contained in Paragraph 9 and therefore denies them.

10. Complete diversity exists because Quotient is a citizen of Delaware and Pennsylvania, and Eddingpharm is a citizen of China.

**ANSWER:** Paragraph 10 includes legal conclusions to which no response is required. To the extent a response is required, Eddingpharm admits that it is organized under the laws of Hong Kong S.A.R., China, with its principal place of business located at Suites 3306, 33/F, Tower 6, the Gateway, Harbour City, 9 Canton Road, Tsim Sha Tsui, KLN, Hong Kong. Eddingpharm lacks information sufficient to form a belief as to the remaining allegations contained in Paragraph 10 and therefore denies them. Except as so admitted, Eddingpharm denies the allegations in Paragraph 10.

11. This Court has personal jurisdiction over Eddingpharm because the subject matter of this litigation arises from Eddingpharm's contacts with this forum including, but not limited to, contracts in which Eddingpharm irrevocably consented to the personal jurisdiction of this Court.

**ANSWER:** Paragraph 11 includes legal conclusions to which no response is required. To the extent a response is required, Eddingpharm does not contest

personal jurisdiction for purposes of this action only. Except as so admitted, Eddingpharm denies the allegations in Paragraph 11.

12. Venue is proper in this District because the subject matter of this litigation arises from Eddingpharm's contacts with this forum including, but not limited to, contracts in which Eddingpharm agreed that all disputes arising thereunder shall be brought in federal courts in or for the State of New Jersey.

**ANSWER:** Paragraph 12 includes legal conclusions to which no response is required. To the extent a response is required, Eddingpharm does not contest venue for purposes of this action only. Except as so admitted, Eddingpharm denies the allegations in Paragraph 12.

## THE SUPPLY AGREEMENT

13. Quotient (formerly known as QS Pharma, LLC) and Shionogi Inc. ("Shionogi") were parties to a Supply Agreement wherein they agreed that [redacted]

**ANSWER:** Eddingpharm admits that, upon information and belief, Shionogi and QS Pharma, LLC entered into the Supply Agreement and refers to that Supply Agreement for the contents thereof. Except as so admitted, Eddingpharm denies the allegations in Paragraph 13.

14. The Supply Agreement had a commencement date of September 18, 2017, and was to continue indefinitely unless terminated via written notice by either party with at least twenty-four (24) months' notice. The Supply Agreement further provided that the Agreement could be immediately terminated in the event of a material breach of the Agreement, provided the breaching party was given notice and at least sixty (60) days to remedy the breach.

**ANSWER:** Eddingpharm admits that, upon information and belief, Shionogi and QS Pharma, LLC entered into the Supply Agreement with a commencement date of September 18, 2017 and refers to that Supply Agreement for the contents thereof. Except as so admitted, Eddingpharm denies the allegations in Paragraph 14.

15. The Supply Agreement contained a choice of law, choice of venue, consent to personal jurisdiction clause that read:

> This Agreement shall be governed by and construed under the laws of the State of New Jersey, U.S.A., excluding its conflict of law provisions. THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS SHALL NOT APPLY TO THIS AGREEMENT. The exclusive venue for any dispute arising under or related to this Agreement shall be in the federal courts in or for the State of New Jersey, and each Party hereby irrevocably consents to the personal jurisdiction of such courts.

**ANSWER:** Eddingpharm refers to the Supply Agreement for the contents thereof and otherwise denies the allegations in Paragraph 15.

16. Section 8.7 of the Supply Agreement states that:

> Disputed Invoices. If Shionogi in good faith disputes any amounts invoiced from QSP, then such dispute shall be resolved in accordance with this Agreement. Pending resolution of the dispute, Shionogi shall be obliged to pay any amounts under the invoice that are not in dispute. On final resolution of any dispute in favour of QSP, Shionogi shall pay all remaining amounts owing within fourteen (14) days of the resolution of the dispute.

**ANSWER:** Eddingpharm refers to the Supply Agreement for the contents thereof and otherwise denies the allegations in Paragraph 16.

17. Pursuant to the Supply Agreement, Quotient was to provide Shionogi quantities of the Product specified in the forecast schedule provided by Shionogi to Quotient.

**ANSWER:** Eddingpharm refers to the Supply Agreement for the contents thereof and otherwise denies the allegations in Paragraph 17.

18. On December 8, 2023, Quotient and Shionogi entered into a Contract Amendment to Supply Agreement ("Amendment Agreement"), which amended certain terms of the Supply Agreement.

**ANSWER:** Eddingpharm admits that, upon information and belief, Shionogi and Quotient entered into the Amendment Agreement and refers to that Amendment Agreement for the contents thereof. Except as so admitted, Eddingpharm denies the allegations in Paragraph 18.

19. The Amendment Agreement amended Section 8.1 of the Supply Agreement to read:

[redacted]

[redacted]

[redacted]

[redacted]

**ANSWER:** Eddingpharm refers to the Supply Agreement and the Amendment Agreement for the contents thereof and otherwise denies the allegations in Paragraph 19.

20. The Amendment Agreement further amended Section 8.5 of the Supply Agreement to read:

[redacted]

**ANSWER:** Eddingpharm refers to the Supply Agreement and the Amendment Agreement for the contents thereof and otherwise denies the allegations in Paragraph 20.

21. Additionally, the Amendment Agreement amended Section 8.9 of the Supply Agreement to read:

[redacted]

> [redacted]

**ANSWER:** Eddingpharm refers to the Supply Agreement and the Amendment Agreement for the contents thereof and otherwise denies the allegations in Paragraph 21.

22. The Amendment Agreement also replaced Section 18.3 of the Supply Agreement in its entirety with:

> (1) Consequences of termination for Shionogi's default or business strategies. On termination of this Agreement by QSP pursuant to clause 17.2 or by Shionogi pursuant to clause 17.3, Shionogi will comply with the requirements of Clause 18.1(b) and pay all amounts due in the subsequent six (6) Calendar Quarters following the breach (that are not disputed in accordance with Clause 8.5).
>
> (2) In circumstances where Clause 7.2(e) applies, Shionogi can terminate the Agreement with 12 months' written notice, during which period QSP will continue to manufacture the Product for as long as it can be manufactured in a manner compliant with the Legal Requirements of the Competent Authority and Shionogi will pay all amounts due in respect of such twelve month period following the notice.

**ANSWER:** Eddingpharm refers to the Supply Agreement and the Amendment Agreement for the contents thereof and otherwise denies the allegations in Paragraph 22.

23. On July 3, 2024, Quotient, Shionogi, and Eddingpharm entered into an Assignment and Assumption Agreement and Consent ("Assignment Agreement," collectively with the Supply Agreement and Amendment Agreement, the "Contracts"). Pursuant to the Assignment Agreement, Shionogi assigned to

Eddingpharm "all of its rights, title and interest in and to, and all of its liabilities and obligations under the Supply Agreement [as amended by the Amendment Contract] except those rights, liabilities and obligations related to Product delivered to Shionogi before July 3, 2024."

**ANSWER:** Eddingpharm admits that Quotient, Shionogi, and Eddingpharm entered into the Assignment Agreement. Eddingpharm refers to the Assignment Agreement for the contents thereof. Except as so admitted, Eddingpharm denies the allegations in Paragraph 23.

24. Throughout 2025 and the first two quarters of 2026, consistent with the terms of the Contracts, upon tendering of the Product to Eddingpharm, Quotient invoiced Eddingpharm. Each invoice required payment by Eddingpharm within forty-five (45) days.

**ANSWER:** Eddingpharm admits that Quotient sent Eddingpharm invoices in 2025 and 2026 purportedly for batches of Product. Except as so admitted, Eddingpharm denies the allegations in Paragraph 24.

25. Additionally, Quotient has performed certain services related to the Product for Eddingpharm pursuant to its obligations under the Contracts and at the request of Eddingpharm. Quotient issued separate invoices to Eddingpharm for these services. Each invoice required payment by Eddingpharm within forty-five (45) days.

**ANSWER:** Eddingpharm admits that Quotient sent Eddingpharm invoices for purported services. Except as so admitted, Eddingpharm denies the allegations in Paragraph 25.

## FEBRUARY 6, 2026 NOTICE LETTER

26. On February 6, 2026, Quotient provided formal written notice to Eddingpharm that Eddingpharm was in material breach of the Contracts.

**ANSWER:** Eddingpharm admits that it received a letter from Quotient dated February 6, 2026 and refers to that letter for the contents thereof. Except as so admitted, Eddingpharm denies the allegations in Paragraph 26.

27. Quotient provided this notice due to Eddingpharm's failure to timely pay twenty-seven (27) Quotient invoices for batches of the Product and three (3) Quotient invoices for testing services performed.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 27.

28. In its February 6, 2026 letter, Quotient also:

a. Reserved its right to suspend performance under the Contracts until all overdue invoices were paid;

b. Reserved its right to charge interest on overdue balances at 1% per month;

c. Reserved its right to recover reasonable costs of collection, including attorneys' fees and court costs; and,

d. Reserved its right to terminate the Contracts if the material breach was not remedied within the sixty (60) day cure period provided under the Contracts.

**ANSWER:** Eddingpharm refers to the letter dated February 6, 2026 for the contents thereof and otherwise denies the allegations in Paragraph 28.

## MARCH 2, 2026 DEMAND FOR REASONABLE ASSURANCE OF COMPLIANCE

29. On March 2, 2026, following a series of communications between Quotient and Eddingpharm, Quotient, through its counsel, wrote to Eddingpharm notifying it that its systematic failure to pay the invoices coupled with Eddingpharm's offers to make payment on the outstanding invoices in future years necessitated Eddingpharm providing Quotient a reasonable assurance of compliance pursuant to N.J.S.A. § 12A:2-609.

**ANSWER:** Eddingpharm admits that it received a letter from Quotient's counsel dated March 2, 2026 and refers to that letter for the contents thereof. Except as so admitted, Eddingpharm denies the allegations in Paragraph 29.

30. Eddingpharm did not respond to Quotient's March 2, 2026 letter.

**ANSWER:** Eddingpharm admits the allegations in Paragraph 30.

## EDDINGPHARM'S FAILURE TO PAY INVOICES AND BREACHES OF THE CONTRACTS

31. Presently outstanding and overdue are thirty-four (34) invoices issued to Eddingpharm for Product delivered and sold to Eddingpharm. Twenty-nine (29) of the invoices are for batches of the Product pursuant to the Contracts. The remaining five (5) invoices are for additional services performed by Quotient and for the benefit of Eddingpharm.

**ANSWER:** Eddingpharm admits that Exhibit A to the Amended Complaint purports to contain a list of thirty-four invoices. Except as so admitted, Eddingpharm denies the allegations in Paragraph 31.

32. Eddingpharm was required to pay each invoice submitted by Quotient within forty-five (45) days.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 32.

33. Eddingpharm has not disputed any of the thirty-four (34) outstanding invoices issued by Quotient.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 33.

34. Thus, presently due and owing for Quotient's invoices is the sum total of [redacted], exclusive of interest, attorneys' fees and costs. The outstanding and due invoices are attached as Exhibit A.

**ANSWER:** Eddingpharm admits that Exhibit A to the Amended Complaint purports to contain a list of invoices. Except as so admitted, Eddingpharm denies the allegations in Paragraph 34.

35. As of the date of this Complaint, Eddingpharm has failed to make any payments on the above delinquent invoices despite several demands.

**ANSWER:** Eddingpharm admits that it has not made any payment to Quotient for the purported list of invoices in Exhibit A to the Amended Complaint. Except as so admitted, Eddingpharm denies the allegations in Paragraph 35.

36. Pursuant to the Contracts, Quotient was permitted to terminate the Contracts upon written notice if Eddingpharm failed to cure material breaches within sixty (60) days.

**ANSWER:** Eddingpharm refers to the Contracts for the contents thereof and otherwise denies the allegations in Paragraph 36.

37. Quotient gave Eddingpharm multiple written notices of its material breaches of the Contracts by failing to pay the outstanding invoices.

**ANSWER:** Eddingpharm admits that Quotient sent Eddingpharm letters dated February 6, 2026 and March 2, 2026 and refers to these letters for the contents thereof. Except as so admitted, Eddingpharm denies the allegations in Paragraph 37.

38. Eddingpharm failed to cure the breaches within sixty (60) days, including failing to give reasonable assurances of compliance.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 38.

39. Accordingly, via written notice, the Contracts were terminated by Quotient on May 26, 2026.

**ANSWER:** Eddingpharm admits that Quotient purported to terminate the Contracts via written notice dated May 26, 2026. Except as so admitted, Eddingpharm denies the allegations in Paragraph 39.

40. Pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to: (i) purchase all of any remaining stock of the Product and/or work in process; (ii) purchase, for the cost paid by Quotient, any raw materials purchased by Quotient for the manufacturing of the Product; (iii) pay all amounts invoiced by Quotient that remain unpaid; and (iv) return all of Quotient's Confidential Information to Quotient.

**ANSWER:** Eddingpharm refers to the Supply Agreement for the contents thereof and otherwise denies the allegations in Paragraph 40.

41. Pursuant to paragraph 18.3(1) of the Supply Agreement, as amended by the Amendment Agreement, Eddingpharm is required to pay, in addition to the outstanding invoices, all amounts due to Quotient for six (6) additional calendar quarters.

**ANSWER:** Eddingpharm refers to the Supply Agreement and the Amendment Agreement for the contents thereof and otherwise denies the allegations in Paragraph 41.

**COUNT I**
**(Breach of Contract)**

42. Quotient repeats and realleges all prior allegations above as though set forth in full herein.

**ANSWER:** Eddingpharm repeats each and every response to each and every allegation above as though fully set forth herein.

43. As set forth above, Quotient and Eddingpharm, as assignee of Shionogi and in its own right, entered into the Contracts for the sale of the Product.

**ANSWER:** Eddingpharm refers to the Contracts for the contents thereof and otherwise denies the allegations in Paragraph 43.

44. Eddingpharm, as assignee of Shionogi and in its own right, entered into the valid, written Contracts.

**ANSWER:** Paragraph 44 includes legal conclusions to which no response is required. To the extent a response is required, Eddingpharm refers to the Contracts for the contents thereof and otherwise denies the allegations of Paragraph 44.

45. Quotient performed all of its obligations under the Contracts.

**ANSWER:** Paragraph 45 includes legal conclusions to which no response is required. To the extent a response is required, Eddingpharm denies the allegations of Paragraph 45.

46. As more fully described above, Eddingpharm materially breached the Contracts by failing to pay outstanding and due invoices and failing to provide reasonable assurances of payment of the outstanding invoices when demanded.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 46.

47. As a direct and proximate result of Eddingpharm's breaches, the Contracts were terminated.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 47.

48. As a direct and proximate result of Eddingpharm's breaches, Quotient has suffered damages.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 48.

49. Eddingpharm currently owes Quotient a total of [redacted] on these invoices, plus interest accruing at one percent (1%) per month, together with attorneys' fees and costs.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 49.

**<u>COUNT II</u>**
**(Declaratory Judgment)**

50. Quotient repeats and realleges all prior allegations above as though set forth in full herein.

**ANSWER:** Eddingpharm repeats each and every response to each and every allegation above as though fully set forth herein.

51. As set forth above, Quotient and Eddingpharm, as assignee of Shionogi and in its own right, entered into the Contracts for the sale of the Product.

**ANSWER:** Eddingpharm refers to the Contracts for the contents thereof and otherwise denies the allegations in Paragraph 51.

52. Eddingpharm, as assignee of Shionogi and in its own right, entered into the valid, written Contracts.

**ANSWER:** Paragraph 52 includes legal conclusions to which no response is required. To the extent a response is required, Eddingpharm refers to the Contracts for the contents thereof and otherwise denies the allegations of Paragraph 52.

53. Quotient performed all of its obligations under the Contracts.

**ANSWER:** Paragraph 53 includes legal conclusions to which no response is required. To the extent a response is required, Eddingpharm denies the allegations in Paragraph 53.

54. As more fully described above, Eddingpharm materially breached the Contracts by failing to pay outstanding and due invoices and failing to provide reasonable assurances of payment of the outstanding invoices when demanded.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 54.

55. Quotient gave Eddingpharm multiple written notices of its material breaches of the Contracts.

**ANSWER:** Eddingpharm admits that Quotient sent Eddingpharm letters dated February 6, 2026 and March 2, 2026 and refers to these letters for the contents thereof. Except as so admitted, Eddingpharm denies the allegations in Paragraph 55.

56. Eddingpharm failed to cure the material breaches of the Contracts within sixty (60) days.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 56.

57. The Contracts were terminated by Quotient on May 26, 2026 via written notice.

**ANSWER:** Eddingpharm admits that Quotient purported to terminate the Contracts via written notice dated May 26, 2026. Except as so admitted, Eddingpharm denies the allegations in Paragraph 57.

58. Pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to: (i) purchase all of any remaining stock of the Product and/or work in process; (ii) purchase, for the cost paid by Quotient, any raw materials purchased by Quotient for the manufacturing of the Product; (iii) pay all amounts invoiced by Quotient that remain unpaid; and (iv) return all of Quotient's Confidential Information to Quotient.

**ANSWER:** Eddingpharm refers to the Supply Agreement for the contents thereof and otherwise denies the allegations in Paragraph 58.

59. Pursuant to paragraph 18.3(1) of the Supply Agreement, as amended by the Amendment Agreement, Eddingpharm is required to pay, in addition to the outstanding invoices, all amounts due to Quotient for six (6) additional calendar quarters.

**ANSWER:** Eddingpharm refers to the Supply Agreement and the Amendment Agreement for the contents thereof and otherwise denies the allegations in Paragraph 59.

60. Accordingly, Quotient is entitled to a declaration that: (i) the Contracts were terminated as of May 26, 2026; (ii) the Contracts were terminated by Quotient as a result of Eddingpharm's failure to remedy its material breaches of the Contracts within sixty (60) days of its receipt of written notice of such breaches; (iii) pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to: (a) purchase all remaining stock of the Product and/or work in process; (b) purchase, for the cost paid by Quotient, any raw materials purchased by Quotient for the manufacture of the Product; and (c) return all of Quotient's Confidential Information to Quotient; (iv) pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to [redacted]; (v) pursuant to paragraph 18.3(1) of the Supply Agreement, as amended by the Amendment Agreement, Eddingpharm is required to pay all amounts due to Quotient for six (6) additional calendar quarters; and (vi) pursuant to paragraph 18.1(b) of the Supply Agreement, Eddingpharm is required to pay Quotient's attorneys' fees and costs.

**ANSWER:** Eddingpharm denies the allegations in Paragraph 60.

## PRAYER FOR RELIEF

Eddingpharm denies that Quotient is entitled to the relief requested or any other relief.

## <u>DEFENDANT EDDINGPHARM'S AFFIRMATIVE DEFENSES</u>

Without prejudice to the denials set forth in its Answer above, and without admitting any allegation of the Amended Complaint not otherwise expressly admitted, Eddingpharm raises the following defenses and affirmative defenses without waiver of any others that may be available to it. Eddingpharm specifically reserves the right to raise any additional defenses and affirmative defenses at any time during the pendency of these proceedings, including any and all which may come to light through discovery or otherwise. In alleging these defenses and affirmative defenses, Eddingpharm does not assume any burden of proof, persuasion, or production not otherwise legally assigned to it.

### <u>FIRST AFFIRMATIVE DEFENSE</u><br><u>(Failure to State a Claim)</u>

Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

### <u>SECOND AFFIRMATIVE DEFENSE</u><br><u>(No Breach)</u>

Plaintiff's claims fail because Eddingpharm has not breached the Contracts.

### <u>THIRD AFFIRMATIVE DEFENSE</u><br><u>(Failure to Satisfy the Contractual Dispute Resolution Precondition)</u>

Plaintiff's claims are barred because Plaintiff failed to satisfy the dispute resolution precondition to litigation required by the Supply Agreement.

**FOURTH AFFIRMATIVE DEFENSE**
**(The Take-or-Pay Provision Does Not Apply as of the Effective Date of the Assignment Agreement)**

Plaintiff's claims fail because the provision in Section 8.1 of the Supply Agreement, as amended by the Amendment Agreement (the "Take-or-Pay Provision"), applied only to Contract Years One through Three and did not apply as of the Effective Date of the Assignment Agreement. Eddingpharm is thus not obligated to pay the invoices Plaintiff issued under the Take-or-Pay Provision and has not breached the Supply Agreement by not paying such invoices.

**FIFTH AFFIRMATIVE DEFENSE**
**(Unenforceable Penalty)**

Plaintiff's claims are barred because the provisions of the Contracts on which Plaintiff relies, including but not limited to the Take-or-Pay Provision, as purportedly construed by Plaintiff, would constitute an unenforceable penalty.

**SIXTH AFFIRMATIVE DEFENSE**
**(Unconscionability)**

Plaintiff's claims are barred because the provisions of the Contracts on which Plaintiff relies, including but not limited to the Take-or-Pay Provision, as purportedly construed by Plaintiff, would be unconscionable.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Failure to Exercise Reasonable Efforts or Act in Good Faith)**

Plaintiff's claims are barred because Plaintiff failed to exercise reasonable efforts and to negotiate, perform, and enforce the Contracts in good faith.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Frustration of Purpose / Impracticality)**

Plaintiff's claims are barred by the doctrines of frustration of purpose and/or impracticality.

**NINTH AFFIRMATIVE DEFENSE**
**(Force Majeure)**

Plaintiff's claims are barred to the extent Eddingpharm's performance was excused, suspended, or delayed by force majeure under Section 19.1 of the Supply Agreement.

**TENTH AFFIRMATIVE DEFENSE**
**(Invalid Invoices)**

Plaintiff's claims are barred because the invoices at issue fail to conform to the invoicing requirements set forth in the Contracts and are therefore invalid and unenforceable.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Good-Faith Dispute as to Invoiced Amounts)**

Plaintiff's claims are barred, in whole or in part, because Eddingpharm disputed the invoiced amounts at issue in good faith. As a result, those amounts were disputed invoices, including under Section 8.7 of the Supply Agreement, and never became "undisputed invoiced amounts" within the meaning of Section 8.9 of the Supply Agreement, as amended by the Amendment Agreement, and cannot support Plaintiff's claims.

**TWELFTH AFFIRMATIVE DEFENSE**
**(No Cognizable Damage)**

Plaintiff's claims are barred or reduced, in whole or in part, because Plaintiff has not suffered any cognizable damage or injury.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(Failure to Mitigate)**

Plaintiff's claims are barred or reduced, in whole or in part, because Plaintiff failed to mitigate its alleged damages.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(Double Recovery)**

Plaintiff's recovery must be reduced, in whole or in part, because the relief Plaintiff seeks, which includes both costs for buyback of stock and materials upon termination of the Supply Agreement and payments under the Take-or-Pay Provision as if the Supply Agreement is still intact, would afford Plaintiff a double recovery for the same costs.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**(Unjust Enrichment)**

Plaintiff would be unjustly enriched if awarded the damages it seeks.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**(Reservation of Additional Defenses)**

Eddingpharm has not knowingly or intentionally waived any applicable affirmative or other defense and reserves the right to rely upon such defenses as may become available or apparent. Eddingpharm further reserves the right to amend this

Answer and/or affirmative defenses accordingly, and/or to withdraw affirmative defenses that it determines are not applicable.

**JURY DEMAND**

Eddingpharm demands a trial by jury on all issues so triable.

## COUNTERCLAIMS

Without waiver of any of its rights, including the rights to seek dismissal and/or transfer of this action, Counterclaim Plaintiff Eddingpharm (Hong Kong) Company Limited ("Eddingpharm" and/or "Counterclaim Plaintiff"), by way of its attorneys, hereby alleges and asserts the following Counterclaims against Counterclaim Defendant Quotient Sciences – Philadelphia, LLC ("Quotient" and/or "Counterclaim Defendant") as follows:

## PARTIES

1. Eddingpharm is a company organized and existing under the laws of Hong Kong S.A.R., China, with its principal place of business at Suites 3306, 33/F, Tower 6, the Gateway, Harbour City, 9 Canton Road, Tsim Sha Tsui, KLN, Hong Kong.

2. Upon information and belief, Quotient is a limited liability company organized and existing under the laws of the State of Delaware, with its executive corporate office at 3 Chelsea Parkway, Suite 305, Boothwyn, Pennsylvania 19061.

## JURISDICTION AND VENUE

3. Upon information and belief, this Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1332, because complete diversity exists between Eddingpharm and Quotient, and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court further has jurisdiction over

these Counterclaims pursuant to 28 U.S.C. § 1367, as they arise out of the same transaction or occurrence as Plaintiff's claims.

4. To the extent Eddingpharm seeks declaratory relief, such relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and this Court's jurisdiction to grant it rests on the bases set forth above.

5. This Court has personal jurisdiction over Quotient based on, *inter alia*, Quotient's filing of this action in this District and Quotient's consent to the jurisdiction of the federal courts in or for the State of New Jersey under the Supply Agreement dated September 18, 2017 (attached as Exhibit A), the Contract Amendment to Supply Agreement dated December 8, 2023 (attached as Exhibit B), and the Assignment and Assumption Agreement and Consent dated July 3, 2024 (attached as Exhibit C), together called the "Contracts."

6. Venue is proper in this District because Quotient brought this action here, and because the Contracts' exclusive venue provision designates the federal courts in or for the State of New Jersey as the exclusive forum for any dispute arising under or related to the Contracts.

**FACTS COMMON TO ALL COUNTS**

7. Quotient (at the time known as QS Pharma, LLC) and Shionogi Inc. ("Shionogi") entered into a Supply Agreement with a Commencement Date of September 18, 2017 (the "Supply Agreement"), under which [redacted]

[redacted]

8. On December 8, 2023, Quotient and Shionogi entered into the Contract Amendment to Supply Agreement (the "Amendment Agreement"). Among other things, the Amendment Agreement negotiated by Quotient and Shionogi revised Section 8.1 of the Supply Agreement to include the following provision (hereinafter, the "Take-or-Pay Provision"):

[redacted]

9. According to Section 1 of the Supply Agreement, "Contract Year" is defined as "[e]ach consecutive twelve-month period beginning on the Commencement Date and continuing through the Term," while the

"Commencement Date" is defined as "September 18, 2017." The Amendment Agreement did not revise either definition. Contract Years One through Three therefore ran from September 18, 2017 through September 17, 2020, and Contract Years Four and Five ran from September 18, 2020 through September 17, 2022.

10. Neither the Supply Agreement nor the Amendment Agreement establishes any fixed quantity or pricing arrangement for any Contract Year after Contract Year Five (2022 onward): Section 8.1, as amended, [redacted] For those periods, the Parties were left to negotiate the supply arrangement in good faith through the general forecasting and ordering mechanism under Sections 3.1 and 3.2 of the Supply Agreement, as amended.

11. On the same day as the Amendment Agreement, Shionogi's parent company, Shionogi & Co., Ltd., entered into an Asset Purchase Agreement with Eddingpharm, under which [redacted] This Asset Purchase Agreement followed a prior Exclusive License and Distribution Agreement between Shionogi & Co., Ltd. and Eddingpharm's affiliate, Eddingpharm (Asia) Macao Commercial Offshore Limited, under which [redacted]

[redacted] At that time, however, Eddingpharm was not a party to the Amendment Agreement between Shionogi and Quotient.

12. On July 3, 2024, Quotient, Shionogi, and Eddingpharm entered into the Assignment and Assumption Agreement and Consent (the "Assignment Agreement"), pursuant to which Eddingpharm assumed certain of Shionogi's rights and obligations under the Supply Agreement, as amended by the Amendment Agreement.

13. Following the Assignment Agreement, Eddingpharm ordered the Product on the basis of Eddingpharm's forecasting pursuant to Sections 3.1 and 3.2 of the Supply Agreement. After Quotient delivered the Product, Eddingpharm paid for any delivered Product.

14. On April 4, 2025, as part of the escalation of the tariff war between China and the U.S., China announced a 34% retaliatory tariff on all U.S.-origin goods.[2] The tariff would have covered the Product and, as a result, would have significantly increased costs for its sale in China. In light of the newly announced tariff, Eddingpharm contacted Quotient the same day the tariffs were announced to suspend production of all future batches of the Product. A record of correspondence

[2] Economics Insider, *US China Tariff War Timeline: From Escalation to 90-Day Truce*, https://economicsinsider.com/us-china-tariff-war-timeline/ (last visited Oct. 1, 2026).

between Eddingpharm and Quotient from April 4, 2025 to April 14, 2025 is attached as Exhibit D. On April 9, 2025, China announced it would further raise its retaliatory tariff on U.S.-origin goods to 84%, and on April 11, 2025, China raised the tariff again to 125%.[3] Eddingpharm has not asked Quotient to restart production of the Product since requesting on April 4, 2025 that Quotient suspend production.

15. Also around this period, an unexpected wave of generic competition began entering the Chinese market.[4] For example, the National Medical Products Administration approved generics of Doptelet® (avatrombopag)—indicated to treat the same condition as the Product—produced by Brilliant Pharmaceuticals and Beijing Continent Pharmaceuticals Co., Ltd. on June 25, 2024[5]; by Qilu Pharmaceutical on October 17, 2024[6]; by Beijing Kawin Technology Share-Holding

---

[3] *Id.*

[4] National Healthcare Security Administration, *Notice of the National Healthcare Security Administration and the Ministry of Human Resources and Social Security on Issuing the National Reimbursement Drug List for Basic Medical Insurance, Work-Related Injury Insurance, and Maternity Insurance (2023)*, https://www.nhsa.gov.cn/art/2023/12/13/art_104_11673.html (last visited Oct. 1, 2026).

[5] National Medical Products Administration, *Delivery Notice for Drug Approval Certification Documents on June 28, 2024*, https://www.nmpa.gov.cn/directory/web/nmpa/zwfw/sdxx/sdxxyp/yppjfb/20240628152218165.html (last visited Oct. 1, 2026).

[6] National Medical Products Administration, *Delivery Notice for Drug Approval Certification Documents on October 21, 2024*, https://www.nmpa.gov.cn/zwfw/sdxx/sdxxyp/yppjfb/20241021153236124.html?type=pc&m= (last visited Oct. 1, 2026).

Co., Ltd. on November 20, 2024[7]; and by Nanjing Hencer Pharmaceutical Co., Ltd. on July 4, 2025[8]. Generic versions of the Product itself were also approved in China, including Sichuan Kelun Pharmaceutical Co., Ltd. on January 2, 2025[9] and Qilu Pharmaceutical on January 14, 2026[10]. The new competition aggressively eroded the Product's pricing, materially reduced Eddingpharm's market share, and significantly impaired the Product's sales performance.

16. In light of these unexpected market shifts and tariffs, which were out of the control of either party, Eddingpharm engaged in good faith negotiations with Quotient regarding the pace of placing orders, arranging production and delivery, and making payments under the Contracts.

---

[7] National Medical Products Administration, *Delivery Notice for Drug Approval Certification Documents on November 22, 2024*, https://www.nmpa.gov.cn/directory/web/nmpa/zwfw/sdxx/sdxxyp/yppjfb/20241122152655180.html (last visited Oct. 1, 2026).

[8] National Medical Products Administration, *Delivery Notice for Drug Approval Certification Documents on July 8, 2025*, https://www.nmpa.gov.cn/zwfw/sdxx/sdxxyp/yppjfb/20250708154440123.html?type=pc&m= (last visited Oct. 1, 2026).

[9] National Medical Products Administration, *Delivery Notice for Drug Approval Certification Documents on January 8, 2025*, https://www.nmpa.gov.cn/directory/web/nmpa/zwfw/sdxx/sdxxyp/yppjfb/20250108154612147.html (last visited Oct. 1, 2026).

[10] National Medical Products Administration, *Delivery Notice for Drug Approval Certification Documents on January 22, 2026*, https://www.nmpa.gov.cn/zwfw/sdxx/sdxxyp/yppjfb/20260122171453170.html?type=pc&m= (last visited Oct. 1, 2026).

17. At the time Eddingpharm requested that Quotient suspend production of the Product on April 4, 2025, Eddingpharm had placed purchase orders with Quotient for seventeen Batches of the Product, with required delivery dates falling between April 15, 2025 and June 15, 2025 (the "Suspended POs"). As per Eddingpharm's request, on information and belief, Quotient suspended production of the Product. Quotient never delivered Product to Eddingpharm after the request to suspend production of the Product on April 4, 2025.

18. In September 2025, Quotient nevertheless invoiced Eddingpharm for eighteen Batches for Q2 and Q3 of 2025—including seventeen Batches that had been the subject of the Suspended POs and one additional Batch—purportedly pursuant to the "Take-or-Pay Provision" under Section 8.1 of the Supply Agreement as amended by the Amendment Agreement. These invoices were numbered as follows: SIN006406 to SIN006414, SIN006576 to SIN006582, SIN006584, and SIN006588.

19. On December 22, 2025, Quotient invoiced Eddingpharm for an additional nine Batches for Q4 of 2025, again purportedly pursuant to the Take-or-Pay Provision. These invoices were numbered as follows: SIN007320 to SIN007328.

20. On March 26, 2026, and on June 30, 2026, Quotient invoiced Eddingpharm an additional [redacted] for each of Q1 and Q2 of 2026, respectively, corresponding to nine batches for each quarter, again purportedly pursuant to the

Take-or-Pay Provision. The Q1 2026 invoice was numbered SIN008190, and the Q2 2026 invoice was numbered SIN009007.

21. In sum, Quotient has invoiced Eddingpharm for forty-five Batches of Product between Q2 2025 and Q2 2026. Among these Batches, seventeen Batches—covered by seventeen invoices ("Suspended PO Invoices")—had been subject to the Suspended POs and twenty-eight Batches—covered by twelve invoices ("Non-PO Invoices," together with the Suspended PO Invoices, "Penalty Invoices")—did not correspond with any purchase order from Eddingpharm. Quotient never delivered any Product to Eddingpharm in connection with any of these Penalty Invoices. Rather, Quotient invoiced all forty-five Batches in the Penalty Invoices purportedly as a consequence of the Take-or-Pay Provision. In fact, the Penalty Invoices all expressly captioned the invoiced Batches as a "Take or Pay Batch" or "Take or Pay Batches" under Section 8.1, priced at [redacted] per Batch, and together the Penalty Invoices total [redacted] of the [redacted] Quotient claims in the Amended Complaint. Eddingpharm never consented to these invoices and has at all times actively disputed them with Quotient.

22. In addition to the twenty-nine Penalty Invoices described above, Quotient has invoiced Eddingpharm for five further invoices (the "Service Invoices"), totaling [redacted], for testing and other services allegedly performed in connection with the Product.

23. Among the Service Invoices, Quotient issued two of them, invoice numbers SIN004861 and SIN004862 (each for [redacted]), purportedly under Work Order Number 3 ("WO3"), dated September 9, 2024, attached as Exhibit E, for dissolution testing of the Product before and after an [redacted]. WO3 provides that the terms of the Supply Agreement apply to the work performed thereunder and divides its [redacted] price into two equal [redacted] milestones: delivery of the manufactured batch before testing (which Quotient invoiced as SIN004862) and issuance of the summary of results (which Quotient invoiced as SIN004861). WO3 further provides that the analytical testing deliverables underlying these invoices, including the f2 analysis[11] and summary, are to be prepared by Quotient but reviewed and approved by Eddingpharm alongside Quotient. Another of the Service Invoices, invoice number SIN005200 for [redacted], was issued under Change Order No. 3 ("CO3") to WO3, signed March 17, 2025, attached as Exhibit F, for a second process validation and the expedited testing and f2 analysis with respect to the [redacted]

24. Eddingpharm never approved the deliverables underlying the Service Invoices under WO3 and CO3 above. Indeed, on February 10, 2026, Eddingpharm wrote to Quotient that Quotient "hasn't provided complete reports" for invoices

[11] Technical analysis report comparing the dissolution behavior of the Product before and after an [redacted]

SIN005200, SIN004861, and SIN004862, and that "[t]he reports need[] to be provided and accepted by Edding first" before payment could be released. A copy of that email is attached as Exhibit G.

25. As recently as February 28, 2026, Eddingpharm was still asking Quotient to correct and reissue the f2 analysis report before payment could be arranged, writing: "Just follow up on the [f]2 analysis for Batch 2412269 vs. 2502036 (DOC-233250 V. 1.0), could you please update and send to us next week? … and then we can arrange the payment." Quotient never responded. A record of correspondence between Eddingpharm and Quotient from July 21, 2025 to February 28, 2026 is attached as Exhibit H.

26. The two remaining Service Invoices, invoice numbers SIN009299 and SIN009297, were issued on July 31, 2026, each purportedly for initiation of twelve-month stability testing under two separate Work Orders. Invoice number SIN009299 was issued under Work Order Number 1 ("WO1"), dated September 9, 2024, attached as Exhibit I, for manufacturing of batches with the [redacted] addressed above, including stability testing at various time points (T=0, 3, 9, 12, 18, 24, 36, and 48 months). Invoice number SIN009297 was issued under Work Order Number 4 ("WO4"), dated January 2, 2025, attached as Exhibit J, for the stability testing of three additional batches of primary packaged Product at various time points (T=0, 3, 6, 9, 12, 18, 24, 36, and 48 months).

27. Like WO3, WO1 and WO4 each provide that the terms of the Supply Agreement apply to the work performed thereunder. The Documentation provisions in each of WO1 and WO4 obligate Quotient to prepare a stability report of results at each time point for Eddingpharm's and Quotient's joint review and approval.

28. Quotient last provided Eddingpharm stability reports at the three-month time point: for one batch (2502036) under WO1 and for two batches (2502028 and 2502037) under WO4 on October 16, 2025, and for one batch (2502038) under WO4 on October 31, 2025. A record of that correspondence is attached as Exhibit K. Quotient did not provide Eddingpharm any further stability reports for any batch under WO1 and WO4 thereafter, including the twelve-month time point that is the purported subject of invoice numbers SIN009299 and SIN009297. Indeed, these two invoices, invoice numbers SIN009299 and SIN009297, were issued more than two months after Quotient's purported termination of the Contracts.

## COUNT I
## (Declaratory Judgment – The Section 8.1 Take-or-Pay Provision Does Not Apply to This Dispute or, in the Alternative, Is an Unenforceable Penalty)

29. Eddingpharm repeats and incorporates by reference the foregoing paragraphs of these Counterclaims as though fully set forth herein.

30. An actual and justiciable controversy exists between Eddingpharm and Quotient regarding whether the Take-or-Pay Provision set forth in Section 8.1 of the Supply Agreement, as amended by the Amendment Agreement, applies to

Eddingpharm with respect to the forty-five Batches of Product at issue in this action. Quotient contends that Eddingpharm is obligated to pay for such Batches pursuant to Section 8.1; Eddingpharm disputes that contention on two independent, alternative grounds.

31. First, the Take-or-Pay Provision [redacted] "Contract Year" is defined in the Supply Agreement by reference to the Commencement Date of September 18, 2017, a definition the Amendment Agreement did not revise, such that Contract Years One through Five ran from September 18, 2017 through September 17, 2022. Neither the Supply Agreement nor the Amendment Agreement establishes any quantity or pricing commitment under Section 8.1 for any Contract Year after Contract Year Five. Because the obligation period established by the Take-or-Pay Provision concluded on September 17, 2022, the Take-or-Pay Provision does not apply to this dispute, including for the twenty-nine Penalty Invoices at issue, all of which were invoiced for 2025 or 2026, well after the operative period of Section 8.1 had ended.

32. Because the Take-or-Pay Provision does not apply for the reasons set forth above, it likewise does not apply to the six additional calendar quarters of payments Quotient seeks under Section 18.3(1) of the Supply Agreement, as amended by the Amendment Agreement. Section 18.3(1) operates only upon

termination "pursuant to clause 17.2 or ... clause 17.3" and requires payment of "all amounts due" in the six Calendar Quarters following the breach. Section 18.3(1) does not itself set a price or quantity for those quarters, and the only provision Quotient invokes as the source of any "amounts due" is the Take-or-Pay Provision in Section 8.1. Because that provision does not apply, no amounts are "due" under Section 18.3(1) for those quarters.

33. Second, and in the alternative, to the extent the Court determines that the Take-or-Pay Provision in Section 8.1 of the Supply Agreement, as amended by the Amendment Agreement, does apply to this dispute, that mechanism is an unenforceable penalty under New Jersey law, including N.J.S.A. § 12A:2-718(1), and is void to the extent it purports to require Eddingpharm to pay the full per-Batch Price for Batches of Product that Quotient never manufactured or delivered.

34. The Take-or-Pay Provision, as amended, provides that [redacted]

35. Requiring Eddingpharm to pay the full Price for Batches that Quotient never manufactured or delivered is grossly disproportionate to any anticipated or actual harm to Quotient and constitutes an unenforceable penalty rather than a

reasonable forecast of just compensation. The same conclusion is corroborated by Section 8.5 of the Supply Agreement, as amended by the Amendment Agreement, which—if the Take-or-Pay Provision still applies from 2022 onward, which it does not—provides that, [redacted] Moreover, the Take-or-Pay Provision was not needed due to any alleged difficulty of proof of loss or any alleged inconvenience or non-feasibility of otherwise obtaining an adequate remedy.

36. Accordingly, Eddingpharm is entitled to a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that (i) the Take-or-Pay Provision in Section 8.1 of the Supply Agreement, as amended, does not apply to the Penalty Invoices, and that Eddingpharm has no obligation to pay any of the invoices issued by Quotient under the Take-or-Pay Provision or amounts for six additional calendar quarters under Section 18.3(1) of the Supply Agreement, as amended; or, in the alternative, (ii) to the extent that provision applies, it is void as an unenforceable penalty, and Eddingpharm has no obligation to pay the full per-Batch Price for any unmanufactured and undelivered Batches of Product.

**COUNT II**

**(Declaratory Judgment – Eddingpharm Did Not Breach the Contracts)**

37. Eddingpharm repeats and incorporates by reference the foregoing paragraphs of these Counterclaims as though fully set forth herein.

38. The Penalty Invoices listed in Exhibit A to the Amended Complaint were all purportedly issued pursuant to the Take-or-Pay Provision. Because the Take-or-Pay Provision of Section 8.1 of the Supply Agreement, as amended by the Amendment Agreement, does not apply to Eddingpharm and is in any event unenforceable, there is no contractual basis on which those invoices became payable, and Eddingpharm's non-payment of them is not a breach of the Contracts.

39. Indeed, for the twenty-eight Batches that were the subject of the twelve Non-PO Invoices—i.e., invoice number SIN006588 for Q3 2025, invoice numbers SIN007320 through SIN007328 for Q4 2025, invoice number SIN008190 for Q1 2026, and invoice number SIN009007 for Q2 2026—Quotient issued invoices for these Batches without any purchase order from Eddingpharm.

40. The other seventeen Penalty Invoices corresponding to the Suspended PO Invoices for seventeen Batches of Product—i.e., invoice numbers SIN006406 through SIN006414 for Q2 2025 and invoice numbers SIN006576 through SIN006582 and SIN006584 for Q3 2025—were the subject of purchase orders as to which Eddingpharm requested changes. Section 3.2(g) of the Supply Agreement entitles Eddingpharm to request a "change of quantity, delivery phasing or dates" regarding a purchase order, and obliges Quotient to "use reasonable efforts to satisfy

any such changes." Eddingpharm requested such changes for the seventeen Suspended PO Invoices by asking Quotient on April 4, 2025 to suspend production of all future Batches of the Product and, following the further tariff increases of April 9 and April 11, 2025, by requesting negotiation of the delivery dates and quantities under the Supply Agreement's ordering and forecasting mechanism. Eddingpharm and Quotient engaged in negotiation over the revised delivery dates and quantities. Because no revised delivery date or quantity has been confirmed and agreed by the Parties in writing, no payment obligation in respect of those seventeen Suspended PO Invoices has yet crystallized, and Eddingpharm's exercise of its contractual right to request changes is not a breach of the Contracts.

41. Independently, Section 8.5 of the Supply Agreement, as amended by the Amendment Agreement, [redacted] Quotient never tendered delivery of, or transferred into storage, any Product corresponding to the twenty-nine Penalty Invoices described above. Because the event that entitles Quotient to invoice under Section 8.5 never occurred, those invoices were issued without contractual basis, and no payment obligation arose from them.

42. Furthermore, Section 8.7 of the Supply Agreement governs disputed invoices. It provides that if Shionogi (as predecessor to Eddingpharm's rights and

obligations) "in good faith disputes any amounts invoiced from [Quotient], then such dispute shall be resolved in accordance with this Agreement," that "[p]ending resolution of the dispute, Shionogi shall be obliged to pay any amounts under the invoice that are not in dispute," and that only "[o]n final resolution of any dispute in favour of [Quotient]" must the remaining amounts be paid, and then only "within fourteen (14) days of the resolution of the dispute."

43. Section 8.9 of the Supply Agreement, as amended by the Amendment Agreement, correspondingly [redacted]

44. Quotient issued the twenty-nine Penalty Invoices after Eddingpharm requested that Quotient suspend production of the Product and in contravention of the terms of the Contracts. Eddingpharm never consented to the Penalty Invoices and has at all times actively disputed them with Quotient.

45. The remaining five invoices, the Service Invoices, likewise never became due. Invoices SIN004861, SIN004862, and SIN005200 remain unpaid because Quotient never provided the corrected deliverables Eddingpharm requested, as WO3 requires Eddingpharm and Quotient to jointly review and approve. Invoices SIN009299 and SIN009297 are unpaid because Eddingpharm never received any stability report at all for either invoice—nothing showing that the twelve-month

stability testing these invoices purport to bill for was ever initiated, let alone the joint review and approval that WO1 and WO4 require.

46. Because none of the Penalty Invoices or the Service Invoices has become an "undisputed invoiced amount" within the meaning of Section 8.9, and because Section 8.7 excuses payment of disputed amounts pending resolution, Eddingpharm's non-payment of these invoices likewise is not a breach of the Contracts.

47. In sum, no payment obligation ever arose as to any of these disputed thirty-four invoices—whether because no purchase order supported them, because Quotient purportedly issued them pursuant to the Take-or-Pay Provision that did not apply or is unenforceable as to Eddingpharm, because Quotient never tendered delivery of or transferred into storage any Product [redacted] because Eddingpharm's requested changes under Section 3.2(g) remain unresolved, because they remain subject to Eddingpharm's review and approval for services allegedly conducted, or because Eddingpharm disputed the invoices at issue in good faith under Sections 8.7 and 8.9—and Eddingpharm's non-payment of them therefore is not a breach of the Contracts.

48. Eddingpharm is entitled to a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that it did not breach the Supply Agreement, because the amounts underlying Quotient's claim of breach never became due.

**COUNT III**
**(Declaratory Judgment – The May 26, 2026 Termination Is Invalid)**

49. Eddingpharm repeats and incorporates by reference the foregoing paragraphs of these Counterclaims as though fully set forth herein.

50. An actual and justiciable controversy exists between Eddingpharm and Quotient regarding whether Quotient's purported termination of the Contracts, by written notice dated May 26, 2026, was valid and effective. Quotient contends that it validly terminated the Contracts pursuant to Section 17.2 of the Supply Agreement based on Eddingpharm's alleged uncured material breach; Eddingpharm disputes that contention.

51. Section 17.2 of the Supply Agreement permits termination for material breach only where the breaching party has been given written notice and has failed to remedy the breach within sixty (60) days. As set forth in Count II above, Eddingpharm did not breach the Contracts. Because there was no material breach for Eddingpharm to cure, Quotient had no right to terminate the Contracts under Section 17.2, and its purported termination on May 26, 2026 is invalid and without legal effect.

52. To the extent Quotient contends that the termination was independently justified by Eddingpharm's alleged non-response to Quotient's March 2, 2026 letter demanding reasonable assurance of performance under N.J.S.A. § 12A:2-609, that contention likewise fails. A demand for adequate assurance is valid under N.J.S.A.

§ 12A:2-609 only where the demanding party has reasonable grounds for insecurity. Because the invoices Quotient cited as the basis for its insecurity were not, for the reasons set forth in Count II, amounts properly due and owing, Quotient lacked reasonable grounds for insecurity, and Eddingpharm's non-response to that demand cannot constitute a repudiation of the Contracts or otherwise support Quotient's termination.

53. Eddingpharm is entitled to a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that Quotient's purported termination of the Contracts on May 26, 2026 is invalid and without legal effect, and that Eddingpharm has no obligation under Section 18.1(b) or Section 18.3(1) of the Supply Agreement, as amended, arising from that purported termination.

## COUNT IV
## (Breach of Contract – Failure to Use Reasonable Efforts)

54. Eddingpharm repeats and incorporates by reference the foregoing paragraphs of these Counterclaims as though fully set forth herein.

55. This Count applies to the seventeen Suspended PO Invoices identified in Count II above—i.e., invoice numbers SIN006406 through SIN006414 and SIN006576 through SIN006582 and SIN006584—as to which Eddingpharm requested changes under Section 3.2(g) of the Supply Agreement.

56. Section 3.2(g) of the Supply Agreement provides that, "[u]pon receipt of any requested change of quantity, delivery phasing or dates requested regarding

a purchase order, QSP shall use reasonable efforts to satisfy any such changes." Quotient breached Section 3.2(g). Beginning in April 2025, Eddingpharm requested changes to the quantities and delivery dates regarding the Suspended POs at issue. Quotient did not use reasonable efforts Section 3.2(g) requires to satisfy those requests. Quotient instead sought to receive payment while avoiding actual production and delivery by invoicing Eddingpharm based on the Take-or-Pay Provision. *See* Exhibit D.

57. As a direct and proximate result of Quotient's breach, Eddingpharm has been damaged in an amount to be determined at trial, together with interest, costs, and attorneys' fees as permitted by the Contracts and applicable law.

**COUNT V**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

58. Eddingpharm repeats and incorporates by reference the foregoing paragraphs of these Counterclaims as though fully set forth herein.

59. Under New Jersey law, every contract imposes on each party an implied covenant of good faith and fair dealing in its performance and enforcement, and that covenant may be breached even where a party is exercising an express and unconditional contractual right. Because the Supply Agreement is a contract for the sale of goods between merchants, the parties' conduct is further subject to the standard set forth in N.J.S.A. § 12A:2-103(1)(b), which defines good faith, as

between merchants, to require honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

60. As set forth in Count I above, the Take-or-Pay Provision in Section 8.1 of the Supply Agreement, as amended, does not apply to the Penalty Invoices at issue. In the alternative, the Supply Agreement's forecasting and ordering mechanism under Sections 3.1 and 3.2, as amended, together with the implied covenant of good faith and fair dealing, requires the Parties to negotiate the supply arrangement for periods not otherwise governed by an express pricing or quantity commitment.

61. Quotient breached the implied covenant of good faith and fair dealing in performing the Contracts by trying to impose on Eddingpharm a take-or-pay requirement which was agreed upon between Quotient and Shionogi and did not apply to Eddingpharm.

62. As a direct and proximate result of Quotient's breach of the implied covenant of good faith and fair dealing, Eddingpharm has been damaged in an amount to be determined at trial, together with interest, costs, and attorneys' fees as permitted by the Contracts and applicable law.

## **REQUEST FOR RELIEF**

WHEREFORE, Eddingpharm respectfully requests that the Court enter judgment in its favor and against Quotient as follows:

(A) Dismissing Plaintiff's Amended Complaint, and each and every claim for relief contained therein, with prejudice;

(B) Declaring that the Take-or-Pay Provision in Section 8.1 of the Supply Agreement, as amended by the Amendment Agreement, does not apply to this dispute;

(C) In the alternative to the relief requested in paragraph (B), declaring that the Take-or-Pay Provision in Section 8.1 of the Supply Agreement, as amended, is an unenforceable penalty and that Eddingpharm has no obligation to pay the full per-Batch Price for any unmanufactured Batches of Product;

(D) Declaring that Eddingpharm has not breached the Contracts;

(E) Declaring that Eddingpharm has no obligation under Section 18.1(b) of the Supply Agreement to purchase remaining stock, work in process, or raw materials, or to pay any outstanding invoices or six additional calendar quarters of amounts under Section 18.3(1), or, in the alternative, that any such obligation is limited to the amounts permitted by Section 3.2(g) of the Supply Agreement;

(F) Declaring that Quotient's purported termination of the Contracts on May 26, 2026 is invalid and without legal effect, and that Eddingpharm has no obligation under Section 18.1(b) or Section 18.3(1) of the Supply Agreement, as amended, arising from that purported termination;

(G) On Count IV, awarding Eddingpharm compensatory damages for Quotient's breach of its Section 3.2(g) obligation to use reasonable efforts to satisfy Eddingpharm's requested changes, in an amount to be determined at trial, together with interest, costs, and attorneys' fees as permitted by the Contracts and applicable law;

(H) On Count V, awarding Eddingpharm compensatory damages for Quotient's breach of the implied covenant of good faith and fair dealing, in an amount to be determined at trial, together with interest, costs, and attorneys' fees as permitted by the Contracts and applicable law;

(I) Awarding Eddingpharm damages on its Counterclaims in an amount to be determined at trial, together with prejudgment and post-judgment interest;

(J) Awarding Eddingpharm its costs and reasonable attorneys' fees as permitted by the Contracts and applicable law; and

(K) Awarding Eddingpharm such other and further relief as the Court deems just and proper.

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Dated: October 5, 2026

By: */s/ Anthony J. Staltari*

Anthony J. Staltari
(Attorney ID. No. 233022017)
Laura L. Fairneny
(*pro hac vice* forthcoming)
Courtney C. Whang
(*pro hac vice* forthcoming)
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel.: (212) 849-7000
anthonystaltari@quinnemanuel.com
laurafairneny@quinnemanuel.com
courtneywhang@quinnemanuel.com

*Attorneys for Defendant*
*Eddingpharm (Hong Kong) Company Limited*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Under Local Civil Rule 11.2, the undersigned counsel for Eddingpharm hereby certifies that, to the best of counsel's knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: October 5, 2026

*/s/ Anthony J. Staltari*
Anthony J. Staltari

**LOCAL CIVIL RULE 201.1 CERTIFICATION**

Under Local Civil Rule 201.1, the undersigned counsel for Eddingpharm hereby certifies that the damages recoverable in this action exceed the sum of $150,000, exclusive of interest and costs, and that Eddingpharm seeks declaratory relief; accordingly, this action is not appropriate for compulsory arbitration.

Dated: October 5, 2026

*/s/ Anthony J. Staltari*
Anthony J. Staltari

# CERTIFICATE OF SERVICE

Anthony J. Staltari hereby certifies pursuant to 28 U.S.C. § 1746 that:

1. I am an attorney at the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, attorneys for Defendant in this action and am a member in good standing of the Bar of the United States District Court for the District of New Jersey.

2. On this date, I filed the annexed document via the CM/ECF system for the U.S. District Court for the District of New Jersey and had it e-mailed to all counsel of record, thereby effectuating service of same upon all counsel of record via electronic means.

I certify under the penalty of perjury that the foregoing statements are true and correct. Executed in New York, New York on October 5, 2026.

*/s/ Anthony J. Staltari*
Anthony J. Staltari